UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RONNIE CORNELL COSBY, )<br>)<br>Defendant. ) | NO. 2:15CR31-PPS |

**OPINION AND ORDER**

Ronnie Cosby was charged in a seven-count indictment based on allegations that, between December 2014 and February 2015, he pimped several underage girls and produced explicit images of them that he used to market their sexual services. T.L. was a 15-year-old girl who had run away from home and was trafficked by Cosby both in his apartment in Hammond, Indiana and in a hotel across the state border in Illinois. Cosby took photos of T.L. displaying her genitalia, and posted them to a website called Backpage to advertise her availability for prostitution. A.C. was a 14-year-old orphan when she met Cosby on a dating site and offered to have sex with him for money. Instead, Cosby recruited A.C. to sell herself to other johns, and posted sexually explicit photos of her on Backpage, by which he arranged for approximately 30 appointments during which A.C. engaged in oral sex, anal sex, and sexual intercourse for money. The government also charged that Cosby exploited a heroin addict, G.P., by supplying her with heroin in exchange for her services as a prostitute, from which Cosby kept all the money that men paid for having sex with G.P. in Cosby's living room. The efforts of

T.L.'s family to locate her eventually resulted in the arrival of the Hammond police, and a federal indictment against Cosby.

After a six-day trial, a jury found Cosby guilty of sex trafficking T.L. (Count 1), two counts of transportation of a minor (again, T.L.) for prostitution (Counts 2 and 3), and two counts of production of child pornography, one count involving images of T.L. and the other of A.C. (Counts 4 and 7). [DE 147.] Cosby was acquitted on Count 5, a charge of sex trafficking G.P. by coercion, and Count 6, a charge of transportation of minor A.C. in interstate commerce for prostitution. [*Id*.] I sentenced Cosby to concurrent life sentences on Counts 1, 2 and 3, and concurrent prison terms of 30 years on Counts 4 and 7. [DE 182, 183.] Cosby took a direct appeal, and the Seventh Circuit affirmed his convictions and sentence. [DE 206.] Now before me, fully briefed and ripe for ruling, is Cosby's motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. §2255.

Section 2255(a) authorizes a federal court to grant relief where a federal prisoner's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." The Seventh Circuit has observed that this is a high bar: "Relief under §2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"

2

*United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)).

**Ground One: Brady Violation**

Cosby's first ground for relief is a claim that the prosecution violated the doctrine of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which forbids the government from suppressing evidence that is favorable and material to the defense in a criminal prosecution. *United States v. King*, 910 F.3d 320, 326 (2018). Cosby contends that he "was prejudiced at the critical stage of pretrial preparation when the government failed to completely comply with the defense discovery motion." [DE 226 at 4.] The argument pertains to Count 4, the charge of production of child pornography based on images of victim T.L. found on Cosby's cell phone.

T.L. testified at trial that Cosby used his phone to take two photos of her (Gov't Trial Exhibits 51A and 51B) as she bared her anus and genitalia. [DE 192 at 67 (Trial Transcript at 707).] She testified that Cosby determined that he would take the photos with his phone and how T.L. would pose. [*Id.* at 69 (T.T. at 709).] Cosby told T.L. he would "send them to people he was trying to get to come have sex with (her)." [*Id.*] In his trial testimony, Cosby contended that those two photos were taken by Davonne Hargrave using Cosby's phone, and that Hargrave had taken other photos of T.L. using his own phone. [DE 194 at 122 (T.T. at 1302).] T.L. testified to the contrary — that no one else was present in Cosby's apartment at the time he took the photos of her. [DE 192 at 147 (T.T. at 787).]

3

Cosby's first argument is that the government withheld evidence that Davonne Hargrave's phone had the same two images on them, and the defense could have relied on that evidence to suggest that it was not Cosby who had taken the photos. [DE 231 at 2-3.] According to Cosby, a warrant was issued on Hargrave's cell phone but the defense never received the extraction report on that phone, or any summary of what was found. [*Id*. at 3.]

The problem is that the application Cosby relies on is not for a warrant to search the contents of Hargrave's phone, but instead for an order directing T-Mobile to provide customer or subscriber account information and usage records for a particular time period. [DE 235 at 8.] Cosby provided only the first page of the document as his Exhibit 3 [DE 231 at 24], but the government has provided the full document. [DE 235-1.] The government represents that it never sought or obtained a warrant to search the contents of Hargrave's phone. [DE 235 at 8.] So the exculpatory evidence Cosby claims the government suppressed was never in the government's possession to begin with. Under these circumstances, there can be no *Brady* violation. *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016) (to prove a *Brady* violation, defendant must show favorable evidence was suppressed).

The second category of *Brady* material relating to Count 4 that Cosby claims was suppressed relates to the contents of T.L.'s phone. This claim is perplexing. Cosby argues that the government obtained two warrants to search the contents of T.L.'s phone based on two different phone numbers, but that the defense never received any

4

information or data relating to February 8 or 9, 2015, the first two days covered by one of the orders. [DE 231 at 3.] The government responds that it did in fact make available to the defense the entire forensic report received on one of T.L.'s phone numbers, and produced in discovery the more limited subscriber information, call logs and IP addresses it obtained from AT&T for T.L.'s previous phone number. [DE 235 at 9; DE 101-1 at 10; DE 101-3 at 4.] To the extent that the extraction report contained no data for February 8 or 9, the government reasonably suggests that none could be recovered because, as T.L. testified at trial, she removed her phone's SIM card on February 8, and Cosby later replaced it with a new one. [DE 192 at 54-55, 143, 228 (T.T. at 694-95, 783, 868).] So there was no *Brady* violation because the government did not have, nor was it aware of, the supposedly exculpatory material in the first place. In sum, Cosby's *Brady* claims do not identify information or evidence that actually existed, and which the government possessed but did not provide to the defense. As a result, there is no *Brady* violation.

One last point: no *Brady* claim was asserted on direct appeal, creating a procedural default that Cosby does not overcome by a showing of cause for the default and prejudice from the argument's omission on appeal. Even after the government makes the procedural default argument in opposition to the motion, Cosby fails to address the issue in his reply, offering no cause or prejudice. This provides a second independent basis for denying relief on Ground One.

**Ground Two:  Prosecutorial Misconduct - Perjury**

Ground Two of Cosby's motion asserts that the prosecution solicited perjured testimony from victim-witness T.L.  [DE 226 at 5.]  Cosby cites a number of instances in which T.L.'s trial testimony contradicted her earlier statements or the grand jury testimony of Detective Biller.  [DE 231 at 5-8.]  As with the *Brady* claim in Ground One, procedural default bars relief on Cosby's perjury claim.  The claim was not asserted on direct appeal, and Cosby offers no cause and prejudice to excuse the default.

The claim also fails on the merits.  To demonstrate that his due process rights were violated by perjured testimony, Cosby must demonstrate: "(1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury."  *United States v. Coleman*, 914 F.3d 508, 512 (7th Cir. 2019) (internal citations omitted).  Cosby's argument founders on the first requirement, as he fails to persuade me that the challenged testimony was in fact false.

Cosby identifies five instances of what he alleges is perjured trial testimony from T.L.:

(1) T.L. testified that she once tried to run away to escape Cosby, but before the grand jury, Detective Biller testified that T.L. did not attempt to leave because she was intoxicated, scared, and did not know how to attempt an escape;

6

      (2) T.L. testified that she engaged in acts of prostitution only because Cosby told her she had to, although in her initial February 19, 2015 interview said she did it because she wanted to make some money and to help out;

      (3) T.L. testified that Cosby made the decision to identify her as a 20-year-old, knowing she was actually only 15, but in her initial interview said that she had told Cosby she was 20;

      (4) T.L. testified that as of a certain point in time she did not know where witness Tamika Murphy lived but at her initial February 19, 2015 interview said that Murphy lived in the Renaissance Apartments in downtown Hammond; and

      (5) T.L. testified that she had vaginal sex with Cosby, but at her initial interview denied having sex with Cosby.

[DE 231 at 5-8.]

      First, Cosby does not demonstrate that T.L.'s knowledge of Tamika Murphy's residence had any likelihood of affecting the jury's verdict. Nor does he demonstrate that her trial testimony was false about a time when she did not know the apartment's location. The four other topics are of more incriminating significance. On the issue of escape attempts, T.L. is not claimed to have contradicted herself, but only that her testimony was at odds with Detective Biller's. That alone does not persuade me that T.L.'s testimony was false. As for the remaining three instances, when T.L.'s trial testimony contradicted her initial interview responses, it is logical to conclude that one of the responses was inaccurate. Cosby would have me assume that T.L. told the truth

7

during her initial interview by law enforcement and later lied on the witness stand when she testified that Cosby had unwanted sex with her, identified her as 20 years old, and pimped her out to other men, and that she had attempted to escape from Cosby's apartment.

But the government aptly summarizes T.L.'s circumstances when she was interviewed on February 19, 2015, the day police came to Cosby's apartment and took her to the police station:

> T.L. was 15 years old, had run away from home, consumed drugs, had illegal and unprotected sex for money with dozens of johns, and had been sexually abused twice by Cosby, a grown man over twice her age.  There were countless reasons for T.L. to feel scared to admit to these harrowing experiences on the first day of her rescue.

[DE 235 at 11.]  The government's expert witness on human trafficking, Carrie Landau, testified that it is uncommon for females to report their involvement in sex trafficking to law enforcement, and that minor victims are generally afraid of contact with law enforcement and tend initially to be uncooperative with investigators because they are "ashamed, embarrassed, fearful, scared, terrified in general of the entire experience." [DE 190 at 21, 23 (T.T. at 340, 342).]

Furthermore, in March 2015, T.L. underwent a lengthy interview by a specialist trained in forensic examination of sex abuse victims.  During that interview, T.L.'s statements were consistent with her later trial testimony.  T.L. acknowledged to that interviewer that Cosby knew T.L.'s actual age [Exh. 3B at 17:45-19:00], that Cosby had sex with her [Exh. 3A at 20:00-24:20], and that T.L. had attempted an escape [Exh. 3A at

8

24:25-24:50.]. Against this record, Cosby does not persuasively demonstrate that T.L.'s incriminating trial testimony was false, rather than her earlier denials of humiliating truths. Because Cosby fails to convince me that any of T.L.'s highlighted trial testimony was perjured, I reject Ground Two of Cosby's motion under §2255.

Cosby's theory of a due process violation on the basis of the challenged testimony of T.L. also fails because the defense had every opportunity to cross-examine T.L. about the ways in which her trial testimony differed from her original interview statements. The Seventh Circuit has observed that "when a defendant alleges that the prosecution used perjured testimony, we must inquire into whether the defendant had adequate opportunity to expose the alleged perjury on cross-examination." *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995). In addition to having that opportunity, defense counsel argued in closing that the jury should disbelieve T.L.'s trial testimony, partly in light of contrary information she gave during her initial interview. [DE 195 at 55 (T.T. at 1469).] Besides procedural bar and Cosby's failure to demonstrate that the challenged testimony was false, his claim fails because the defense argued to the jury that T.L. wasn't testifying truthfully, and he was convicted nonetheless.

**Ground Three: Ineffective Assistance of Counsel**

Next Cosby alleges that his trial counsel rendered ineffective assistance in several respects. The Sixth Amendment to the United States Constitution guarantees a criminal defendant a right to the effective assistance of counsel for his defense. *Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022). In order to obtain relief for a violation of this

9

right, Cosby must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). If either of these prongs cannot be met, the claim fails, and I am not required to address both prongs if either is deficient. *Thompson v. Vanihel*, 998 F.3d 762, 767 (7th Cir. 2021).

"To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011). This deference must guide my analysis of counsel's performance on the first prong of the *Strickland* test. As to the second prong, prejudice to the defense requires a showing that "there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). I turn now to the allegations Cosby makes against his attorney.

Cosby's first argument is that counsel failed to meet frequently enough with Cosby to "develop a theory of defenses." [DE 231 at 11.] Cosby's generalized claim is entirely unpersuasive, given the utterly capable and well-prepared performance of defense counsel that I witnessed at trial, and in view of the jury's acquittal of Cosby on two of the seven counts against him. Cosby's trial counsel was appointed on November

10

22, 2016, after a previous attorney was allowed to withdraw. [DE 72, 74.] At that time, trial was set for December 12, 2016, and Cosby's new attorney promptly moved for a trial continuance. [DE 70, 75.] The next year, with trial set for September 7, 2017, a fourth superseding indictment was filed on July 20, 2017. [DE 88, 90.] Cosby specifically complains that his attorney met with him in person three times prior to his arraignment on the new superseding indictment and a fourth time before seeking another trial continuance on August 11, 2017. [DE 231 at 11.] That request for a continuance was denied. [DE 107.]

The trial commenced on September 6, 2017. [DE 141.] Cosby's desire for more consultation with his attorney prior to trial does not demonstrate that she was in fact ill-prepared to competently and effectively represent him at trial or that he was prejudiced in any way, the two questions that are actually pertinent to the ineffective assistance analysis. Cosby complains that no time was devoted to "strategizing between movant and trial counsel during trial preparation." [DE 231 at 12.] I can guarantee that Cosby's counsel's long experience makes her entirely capable of devising an appropriate trial strategy, and that Cosby has no such experience or ability. More important, the law on effective assistance of counsel makes plain that the attorney has ultimate control of trial strategy, not the client, and that an attorney's trial strategy is "virtually unchallengeable" if counsel has conducted a thorough investigation of the law and facts pertinent to a client's case. *Sullivan v. Fairman*, 819 F.3d 1382, 1391 (7th Cir. 1987) (citing *Strickland*, 466 U.S. at 690-91.) *See also Taylor v. Illinois*, 484 U.S. 400, 418 (1988) (the

11

attorney has full authority to manage the conduct of the trial and need not consult with the client on every tactical decision).

Cosby's dissatisfaction with the amount of time his attorney spent discussing the trial with him falls well short of overcoming the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Rejecting a similar claim, the Seventh Circuit observed that "we know of no case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel." *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (internal citations omitted). Cosby does not explain how he was prejudiced or why the outcome of the trial would have been different if his counsel had spent more time meeting with him prior to trial. *Id*. *See also Mendoza v. United States*, 755 F.3d 821, 832 (7th Cir. 2014) (defendant fails to show that counsel's failure to spend additional time reviewing discovery with him "would have changed [defendant's] ability to prepare for or participate in his trial or otherwise would have affected the trial's outcome"); *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003).

Cosby next contends that his trial counsel failed to make adequate use of T.L.'s initial interview to challenge the credibility of her trial testimony. [DE 231 at 12.] This claim hearkens back to Cosby's earlier contentions about contradictions between T.L.'s initial interview and trial testimony supporting a conclusion that the latter was perjured. Cosby argues that his counsel should have used the interview responses to impeach T.L. on cross-examination. [*Id*. at 13.]

12

The government responds that a decision "not to impeach a particular witness is normally considered a strategic choice within the discretion of counsel," and so does not support an ineffective assistance claim. *Bryant v. Brown*, 873 F.3d 988, 996 (7th Cir. 2017). This principle supports rejection of Cosby's argument. One reason Cosby's counsel might have made a reasonable strategic choice in this regard is that use of the interview against T.L. could have backfired by opening the door to the government's use, under Rule 801(d)(1)(B), of portions of T.L.'s subsequent forensic interview that were *consistent* with her trial testimony and would have substantially bolstered her credibility. Ultimately, I find that defense counsel engaged in a thorough and detailed cross-examination of T.L., and that Cosby has not shown her approach was either deficient or prejudicial.

Cosby also charges his trial counsel with failure to "contact, interview, or call the eye-witness" Tamika Murphy. [DE 231 at 14.] There are particular requirements for succeeding on a claim of this kind. "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994), quoted in *Ryan v. United States*, No. 3:15-CR-62 RLM-MGG, 2021 WL 38005, at *3 (N.D.Ind. Jan. 5, 2021) (Miller, J.). Cosby contends that Ms. Murphy was present through almost all of the time he spent with T.L., and "would have corroborated movant's version of events." [DE 231 at 14.] This general assertion does not meet the

requirement of a "specific, affirmative showing as to what the missing evidence would have been." *Patel*, 19 F.3d at 1237. Cosby offers no affidavit from Ms. Murphy as to what she would have been willing and able to testify to, and his claim that Ms. Murphy was usually present when T.L. was with Cosby is inadequate to establish what her testimony would have been, and that it would have resulted in Cosby's acquittal on any particular charge.

In any event, the government responds with a persuasive explanation of sound reasons defense counsel may not have called Ms. Murphy as a witness. The government cites Murphy's grand jury appearance, in which she testified that during her stay in a Howard Johnson's hotel with Cosby and T.L., she saw Cosby taking pictures of T.L. wearing only her bra and panties, and that Murphy was present in the bathroom while she understood T.L. to be having sex with multiple men who visited the hotel room, after which T.L. would bring money into the bathroom and give it to Murphy. [DE 235-3 at 6, 7.] A strategic decision not to call Ms. Murphy as a witness appears entirely reasonable when her testimony confirmed Cosby's sex trafficking of T.L. at the Lansing, Illinois hotel. The government also points to the trial testimony of another of Cosby's girlfriends, Ariel McBounds, to whom Cosby described Tamika Murphy as having a mental disability and being a "slave." [DE 193 at 249.] The government offered evidence at trial that, at Cosby's direction, McBounds retrieved from Tamika the bedding from the Howard Johnson and asked her to dispose of it,

14

which she did. [DE 193 at 246-48, 251.] In view of this evidence, a decision not to call Tamika Murphy appears to have been entirely reasonable defense strategy.

Trial counsel is also said to have failed to use other "exculpatory evidence" in her defense of Cosby, namely business cards found at McBounds' apartment, and consent forms collected during the search of Cosby's apartment. [DE 231 at 16-17.] Cosby contends that he asked his trial counsel to use this evidence to support his claim that he was trying to start a business videotaping amateur porn actors. I agree with the government's response that a defense tactic portraying Cosby as a producer of amateur pornography was not likely to be helpful. [DE 235.] It is entirely unclear how such an approach would have decreased, rather than increased, the likelihood of the jury finding that Cosby had produced the sexually explicit images of T.L. and A.C. on which Counts 4 and 7 of the indictment were based. This particular ineffective assistance claim is not addressed in Cosby's reply to the government's opposition [DE 238], and for good reason. The claim is without merit, as it does not demonstrate any deficiency of defense counsel's performance, or any prejudice to Cosby.

**Ground Four:  Constructive Amendment of the Indictment**

Cosby's final ground for relief is that I erroneously instructed the jury "to convict movant on an element that had not been contained in the indictment," thereby violating his Fifth Amendment right to indictment by grand jury. [DE 226 at 8.] The argument relates to Count 7 of the Fourth Superseding Indictment, a charge of production of child

pornography.[1]  The indictment charged that Cosby "attempted to and did knowingly *employ, use, persuade, induce and entice* A.C., a 14 year-old minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct...." [DE 90 at 7 (emphasis added).]  The government proposed a jury instruction on Count 7 that altered the indictment's language slightly to describe the conduct as "*employed, used, persuaded or coerced* AC to take part in sexually explicit conduct."  [DE 126 at 32 (emphasis added).]  Cosby's proposed instruction number 7 contained the language "employed, used or persuaded AC to take part in sexually explicit conduct...."  [DE 137 at 11.]  The Court's proposed instruction number 24 [DE 149 at 25] and final instruction number 23 [DE 150 at 24] contained the government's proposed language including the word "coerced."  Cosby now contends that the use of the word "coerced" impermissibly broadened the indictment and the basis for his conviction.  [DE 231 at 18-19.]

Constructive amendment of an indictment occurs "when a district court expands the possible bases of conviction beyond those charged by the grand jury."  *United States v. Bell*, 28 F.4th 757, 763 (7th Cir. 2022), citing *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002).  As happened in *Bell*, however, Cosby waived his right to challenge proposed jury instructions when defense counsel affirmatively approved them on the record at trial.  At the instruction conference, Cosby did not object to the language he

---

[1] The challenged language was also used in the instruction pertaining to Count 4, another count of production of child pornography featuring victim T.L., but Cosby's argument does not raise this instruction.

16

now challenges. [DE 194 at 218.] Because counsel stated she had no objection, the argument was waived and can no longer be made. *Bell*, 28 F.4th at 763.

Analyzed on its merits, the claim also fails. Whether a constructive amendment has taken place is a "'fact-intensive' question that focuses on the trial evidence and the jury instructions." *United States v. Laut*, 790 F.Appx. 45, 48 (7th Cir. 2019). At trial, an Assistant United States Attorney acknowledged that the government did not allege coercion in either Count 4 or Count 7, but instead relied on the weaker verbs "employ, use, persuade, induce or entice." [DE 190 at 91.] In closing argument, the prosecution argued that it had proved that Cosby "employed or used...or persuaded" the girls to pose for the pornographic images. [DE 95 at 18, 32.] "Coerce" is a higher standard than each of these verbs, not a lower one. This is borne out by final jury instruction 31's definition of "coercion" [DE 150 at 22], a definition given because Count 5 of the indictment charged sex trafficking of victim G.P. "by fraud and coercion." [DE 150 at 22.] Even if the jury was persuaded that Cosby had employed coercion in the commission of Counts 4 and 7, that same conclusion would necessarily entail employing, using or persuading the girls as well. The word "coerced," though erroneously present in the jury instructions on the counts charging production of child pornography, did not expose Cosby to any greater risk or scope of conviction, and he was not prejudiced by the error, even if the argument had not been waived. *Laut*, 790 Fed.Appx. at 48 (constructive amendment is plain error only if the defendant shows he

17

was prejudiced). Cosby is not entitled to any relief on the basis of his constructive amendment argument.

**Conclusion**

Relief under §2255 "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Cosby seeks relief on the basis of claims he could have, but not did, raise on direct appeal. He also seeks relief on the basis of ineffective assistance of counsel claims for which he demonstrates neither deficient performance nor prejudice. The motion to vacate, set aside or correct his conviction will be denied.

Because I find that Cosby has not made a substantial showing of the denial of a constitutional right, and that reasonable jurists could not debate the reasoning for rejecting his motion under §2255, I will also deny a certificate of appealability. 28 U.S.C. §2253(c)(2); *Welch v. United States*, 136 S.Ct. 1257, 1263 (2016). If Cosby wishes to appeal this Opinion and Order denying his §2255 motion, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

ACCORDINGLY:

Defendant Ronnie Cornell Cosby's Motion under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence [DE 226] is DENIED, and a certificate of appealability is also DENIED.

The Clerk shall enter judgment against Cosby and in favor of the United States.

SO ORDERED.

ENTERED: June 17, 2022.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE